**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NEERAN S.,

        Plaintiff,

        v.

FRANK BISIGNANO,

        Defendant.

No. 25 CV 4367

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Neeran S.[1] appeals the Social Security Commissioner's denial of her application for disability insurance benefits. Because substantial evidence supports the administrative law judge's decision, I affirm.

## I.    Legal Standards

The Appeals Council declined review, making the ALJ's decision final under the Social Security Act, 42 U.S.C. § 405(g).[2] *See Kruckow v. Bisignano*, 2026 WL 27807, at *2 (7th Cir. Jan. 5, 2026). Judicial review of Social Security decisions is deferential; I must affirm if the ALJ applied the law correctly and supported her decision with substantial evidence. *See Swiecichowski v. Dudek*, 133 F.4th 751, 756 (7th Cir. 2025). Substantial evidence is not a high threshold. *Id.* It means "such

---

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II.    Background

Neeran S. suffered from degenerative disc disease, depressive disorder, anxiety disorder, and posttraumatic stress disorder. [10-1] at 22.[3] Plaintiff also alleged a history of thalassemia and vertigo. *See, e.g.*, [10-1] at 63. In December 2021, plaintiff applied for disability insurance benefits, alleging disability starting November 15, 2020. [10-1] at 20. The Social Security Administration denied her application— initially and upon reconsideration—before plaintiff appeared for a hearing before an ALJ in December 2023. [10-1] at 20. In March 2024, the ALJ issued an unfavorable decision, concluding that plaintiff was not disabled during the relevant period. [10-1] at 21–31.

The ALJ used the agency's five-step sequential analysis to determine plaintiff's disability status. *See* 20 C.F.R. § 404.1520. This process requires the ALJ to consider "whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

perform any other work existing in significant numbers in the national economy." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) (citation omitted). The claimant bears the burden of proving disability at steps one through four, but the burden shifts to the Commissioner at step five. *Id.*

Plaintiff takes no issue with the ALJ's findings at the first step. [16] at 5. The ALJ found that plaintiff had not engaged in substantial gainful activity since November 15, 2020. [10-1] at 22. At step two, the ALJ found that plaintiff had severe impairments, including degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, and posttraumatic stress disorder. [10-1] at 22. Plaintiff notes, however, that the ALJ did not acknowledge her alleged sciatica or lumbar radiculopathy. [16] at 5. The ALJ also found that plaintiff's alleged thalassemia was non-severe. [10-1] at 22. Plaintiff does not take issue with the ALJ's finding at step three: that she did not have an impairment or combination of impairments that met or medically equaled a conclusively disabling impairment. [10-1] at 23.

Because plaintiff had severe impairments under step two but these impairments were not conclusively disabling under step three, the ALJ proceeded to determine her residual functional compacity. [10-1] at 24–29. Residual functional capacity is an assessment of a claimant's ability to do sustained work-related physical and mental activities despite limitations from her impairments. *See* 20 C.F.R. § 404.1545.

The ALJ determined that plaintiff had the residual functional capacity to perform light work in accordance with 20 C.F.R. § 404.1567(b), subject to the

following exceptions: "occasionally climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl; understand, remember and carryout simple routine instructions and use judgment limited to simple work related decisions; and able to tolerate occasional interaction with supervisors, coworkers and the general public." [10-1] at 25.

In determining plaintiff's residual functional capacity, the ALJ considered her reported symptoms and the medical opinions and prior administrative medical findings relevant to the case. [10-1] at 25. Plaintiff alleged a limited ability to work due to vertigo, thalassemia, depression, and back pain. [10-1] at 25. She also testified to mental impairments such as depression and anxiety.[4] The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements about the intensity, persistence, and limiting effects were not entirely consistent with the medical and other record evidence. [10-1] at 25–26.

In particular, the ALJ noted that plaintiff had not fainted in five years; went to the gym and used the treadmill until shortly before the hearing; and exhibited full strength, no sensory defects, and no problem with coordination. [10-1] at 26–27. The ALJ also cited treatment notes from Dr. Manfred Samimy, who had recommended eight weeks of treatment to reduce her pain, [10-1] at 26, and from Dr. Charles Brikha, who similarly opined that most patients with low back pain will improve with

---

[4] In her opening brief, plaintiff does not challenge the ALJ's findings with respect to her alleged mental impairments. I therefore limit my review to the ALJ's evaluation of plaintiff's physical impairments. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (noting that issues not raised in the opening brief are waived).

time, [10-1] at 28. The state agency's medical consultants found that plaintiff could perform work at less than a full range of light exertion. [10-1] at 28.

The ALJ found the state agency records persuasive. [10-1] at 28. In support of her finding, the ALJ noted that the state agency opinion and the hearing evidence were consistent. [10-1] at 28 (explaining that "[t]he hearing level evidence supports no greater limitation" than that suggested by the state agency records). In contrast, the ALJ found Dr. Brikha's opinion unpersuasive as to any long-term limitations. [10-1] at 28. She noted instead that his assessment suggested temporary restrictions. Beyond plaintiff's subjective accounts, the ALJ concluded that the record evidence was unpersuasive as to any permanent work-related limitations. [10-1] at 28.

At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, and residual functional capacity, she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. [10-1] at 31. In other words, the ALJ found that plaintiff was not disabled. [10-1] at 31. The Social Security Appeals Council denied review of the ALJ's decision. [10-1] at 5–7. Plaintiff brings this suit seeking judicial review.

## III. Analysis

An ALJ's decision need not specifically address every piece of evidence but must "build an accurate and logical bridge from the evidence to its conclusion." *Swiecichowski*, 133 F.4th at 756 (citations omitted). District courts will not reweigh the evidence or substitute its judgment for that of the ALJ. *Wilder*, 22 F.4th at 651. But an ALJ must articulate adequately the bases for her conclusions to demonstrate

that she considered key evidence. *See Kruckow*, 2026 WL 27807, at *2. Harmless error review applies to the ALJ's decision. *See Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016).

Plaintiff contends that the ALJ erred on two separate grounds. First, plaintiff argues that the ALJ failed to adequately assess the medical opinions of two treating providers. [16] at 6–8. Second, plaintiff argues that the ALJ failed to properly consider her subjective symptoms and limitations. [16] at 9–10. According to plaintiff, each alleged error is sufficient to warrant remand.

### A.    Medical Opinions

Despite finding severe impairments at step two, plaintiff faults the ALJ for excluding her alleged sciatica, radiculopathy, and thalassemia from that list. [16] at 5.[5] More specifically, plaintiff argues that the ALJ failed to adequately assess her treating providers' opinions and the prior administrative findings. [16] at 7.

#### 1.    Dr. Brikha's Opinion

Plaintiff begins by challenging the adequacy of the ALJ's assessment of Dr. Brikha's opinion. [16] at 7. The ALJ's discussion of Dr. Brikha's opinion was brief: she noted that, in June 2022, Dr. Brikha instructed plaintiff to limit activity to comfort and avoid activities that increased discomfort. [10-1] at 28. The ALJ then noted that those instructions provided no clear function-by-function assessment of plaintiff's capabilities. [10-1] at 28. Plaintiff argues that this summary was deficient and overlooked other evidence of her alleged impairments. [16] at 2.

---

[5] This argument is addressed in more detail below.

The ALJ did not err in rejecting Dr. Brikha's opinion as unpersuasive as to any permanent work-related restrictions. ALJs evaluate the persuasiveness of a medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies. 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ must explain only how she considered the first two factors—supportability and consistency—but need not explain her consideration of the other factors. *Id.* § 404.1520c(b)(2). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). Consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

The ALJ sufficiently explained how she considered both required factors here. With respect to supportability, plaintiff agrees that the details in Dr. Brikha's assessment were "sparse." [16] at 4. For one, Dr. Brikha's "severe distress" note lacks explanation and is more closely related to a claim for mental impairment than one for physical impairment. [10-1] at 350. The notes about "joint tenderness" and "weakness" similarly lack any nexus to explain how they would contribute to long-term impairment. [10-1] at 351. These facts are compatible with the ALJ's statement that Dr. Brikha provided no clear assessment of plaintiff's capabilities. [10-1] at 28.

With respect to consistency, the ALJ's explanation of Dr. Brikha's assessment echoes her explanation of other evidence in the record. Namely, the ALJ made several

7

references to medical opinions in the record that advocated for temporary treatment. *See* [10-1] at 26, 28. Dr. Brikha's instructions ultimately do not support a finding of disability; if anything, his emphasis on exercise—and his note that 90% of patients with low back pain will improve in two to six weeks—seems to suggest the opposite. [10-1] at 352. The ALJ did not err in evaluating Dr. Brikha's opinion.[6]

### 2. Dr. Samimy's Opinion

Plaintiff next challenges the ALJ's decision on the grounds that the ALJ completely omitted mention of Dr. Samimy's opinion from her review of the evidence. [16] at 8. The Commissioner concedes that the ALJ did not evaluate the medical opinion but notes that she did cite the relevant treatment notes earlier in the opinion and argues that any error here was harmless. [19] at 9.

Plaintiff cites *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009), for the proposition that an ALJ cannot cherry-pick facts that support a finding of non-disability. [16] at 1–2. But in *Myles*, the ALJ's "selective discussion of the evidence" was one of several factors that called into question the ALJ's determination. 582 F.3d at 678. The court also cited the ALJ's questionable credibility findings, cursory analysis of symptoms, and improper medical determination as relevant factors in concluding that the ALJ had not adequately supported his conclusions. *Id.*; *see also id.* at 676 ("Together, these

---

[6] To the extent plaintiff challenges the sufficiency of the ALJ's assessment of supportability and consistency, I note that any alleged error was harmless. Plaintiff has not identified a consequential legal mistake by the ALJ, and the ALJ's finding that plaintiff lacked permanent work-related limitations is supported by the evidence in this case.

errors serve to undermine the ALJ's determination that [the plaintiff] was not disabled.").

The Commissioner does not attempt to distinguish this case from *Myles*. Instead, he argues that any error committed by the ALJ in failing to discuss Dr. Samimy's opinion was harmless. [19] at 8.

There is some question as to whether the ALJ's actions here were in error. For one, the ALJ did not entirely overlook Dr. Samimy's medical opinions; despite failing to *evaluate* the opinion, the ALJ did cite the doctor's treatment notes. [10-1] at 26. Her reference specifically noted Dr. Samimy's recommendation that plaintiff begin with eight weeks of treatment—a temporary limitation not dissimilar to that of Dr. Brikha. Further, "social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by the claimant." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Thus, an evidentiary omission is not always sufficient grounds for remand. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015).

Given the relatively limited medical record in this case, I find that the ALJ erred in failing to properly evaluate Dr. Samimy's opinion. As discussed above, an ALJ is required to discuss the consistency and supportability of every medical opinion in the record. 20 C.F.R. § 404.1520c(b). Further, in contrast to cases with a voluminous record where some medical records may be redundant, plaintiff relied on Dr. Samimy's medical records as one of the four primary pieces of evidence in her hearing before the ALJ. *See* [10-1] at 260.

But whether and to what degree Dr. Samimy's opinion is consistent with the other evidence in the record is pertinent to whether this case should be remanded. *See Kelley v. Colvin*, 2025 WL 25959, at *4 (7th Cir. Jan. 3, 2025). Courts "will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (citation omitted). In assessing whether an error is harmless, courts examine the record to determine whether they can "predict with great confidence what the result of remand will be." *Id.* (citation omitted).

Here, plaintiff argues that the ALJ's failure to evaluate Dr. Samimy's opinion was not harmless because the medical records contradicted the ALJ's findings that plaintiff could perform light work and avoid frequent interruptions to work. [16] at 8. But to be assessed as part of a claimant's residual functional capacity, an impairment must be "expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Courts have upheld ALJ decisions disregarding medical opinions where the ALJ reasonably concluded that the assessment was temporally limited. *See, e.g.*, *Stepp*, 795 F.3d at 719.

Dr. Samimy's records—like Dr. Brikha's—imply a temporal limitation. *See* [10-1] at 553. Nothing in the "home treatment" section of the notes suggests permanent (or even long-term) disability. Also like Dr. Brikha, Dr. Samimy encouraged plaintiff to exercise. [10-1] at 553. Though plaintiff points to Dr. Samimy's notes on her pain failing to improve as evidence of long-term limitations, *see* [21] at 3, this interpretation is hard to reconcile with the fact that Dr. Samimy treated plaintiff for

10

under six weeks and the record is devoid of other objective evidence suggesting the presence of long-term disability. I find that the ALJ's failure to evaluate Dr. Samimy's medical opinion was harmless.

### B.      Plaintiff's Symptoms

Plaintiff next argues that the ALJ erred in dismissing plaintiff's testimony about her limitations on sitting and standing, and her need to frequently change positions. [16] at 9. She also challenges the ALJ's finding that plaintiff's thalassemia is non-severe. [16] at 9–10.

The standard of review for an ALJ's assessment of a plaintiff's allegations is deferential: courts "reverse only those determinations that are 'patently wrong.'" *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023) (citation omitted). Further, "[t]here is no presumption of truthfulness for a claimant's subjective complaints." *Knox v. Astrue*, 327 Fed. App'x 652, 655 (7th Cir. 2009). "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A).

Though the ALJ did not explicitly analyze plaintiff's alleged inability to sit or stand, her logic was cohesive. In finding that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent, the ALJ cited (1) physical examination findings that typically showed full strength and no sensory deficits; (2) plaintiff's admission to spending 30–45 minutes on the treadmill until recently; and (3) a lack of reports showing plaintiff was fainting with any regularity. [10-1] at 27. These findings also factored into the ALJ's consideration

11

of plaintiff's alleged thalassemia, as plaintiff had stated that her fainting was due to thalassemia, *see* [10-1] at 25, and the ALJ pointed to substantial evidence suggesting plaintiff's fainting was non-severe. Ultimately, the ALJ's findings all challenge the credibility of plaintiff's alleged limitations. The ALJ adequately assessed plaintiff's symptoms.

## IV.    Conclusion

Plaintiff's motion to reverse and remand the Commissioner's decision, [16], is denied. The ALJ's decision is affirmed. Enter judgment in favor of the Commissioner and terminate case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 3/31/2026

12